# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| ASKAN HOLDINGS, LTD.<br>Guzeloba 2170 Street<br>Babacan Plaza No. 6 Floor 1<br>Muratpasa, Antalya, Turkey<br><br>    Plaintiff,<br><br>  v.<br><br>UNITED STATES DEPARTMENT OF THE TREASURY,<br>OFFICE OF FOREIGN ASSETS CONTROL,<br>U.S. Department of Treasury<br>Treasury Annex<br>1500 Pennsylvania Avenue, NW<br>Washington, DC 20220<br><br>and<br><br>THE HONORABLE STEVEN T. MNUCHIN, SECRETARY OF THE UNITED STATES DEPARTMENT OF THE TREASURY, in his official capacity.<br>U.S. Department of Treasury<br>1500 Pennsylvania Avenue, NW<br>Washington, DC 20220<br><br>and<br><br>ANDREA GACKI, DIRECTOR, OFFICE OF FOREIGN ASSETS CONTROL, UNITED STATES DEPARTMENT OF THE TREASURY, in her official capacity.<br>U.S. Department of Treasury<br>Treasury Annex<br>1500 Pennsylvania Avenue, NW<br>Washington, DC 20220<br><br>    Defendants. | Case No.: _____ |

## COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF, RELIEF IN THE NATURE OF MANDAMUS AND OTHER APPROPRIATE RELIEF

  Plaintiff Askan Holdings, Ltd. ("Askan"), by and through undersigned counsel, pursuant to 5 U.S.C. § 706, 28 U.S.C. § 1361, and other appropriate authority, hereby files this complaint

and petitions this court to issue a Declaratory Judgment, Injunctive Relief, or, alternatively, a Writ of Mandamus compelling the United States Department of Treasury, Office of Foreign Assets Control ("OFAC") to grant a license to Askan or, alternatively, to provide Askan with all unclassified information supporting OFAC's decision to deny a license. As explained herein, Askan seeks declaratory and injunctive relief, relief in the nature of mandamus, and other appropriate relief because OFAC has violated (a) the Administrative Procedure Act, 5 U.S.C. § 551, *et seq.*, (b) the Due Process Clause of the Fifth Amendment.

## PARTIES

1. Plaintiff Askan Holdings, Ltd. is a Seychelles-registered aircraft holding company. Askan is a wholly-owned subsidiary and the dedicated holding company of Transylvania International Airlines SRL ("TIA"), a Romanian company which operates aircraft. Mr. Nizam Kucuk Akyuz is TIA's director and sole shareholder.

2. Defendant Office of Foreign Assets Control ("OFAC") is a federal agency within the United States Department of Treasury, located at 1500 Pennsylvania Avenue, NW, Washington, DC 20220. OFAC is responsible for administering and enforcing economic and trade sanctions against targeted foreign countries, regimes, and other entities. OFAC enforces the Global Terrorism Sanctions Regulations ("GTSR"), 31 C.F.R. Part 594, which is a set of regulations prohibiting transactions between U.S. persons and designated terrorists or individuals whose property or interests in property are blocked pursuant to 31 C.F.R. § 594.201.

3. Defendant Steven T. Mnuchin is sued in his official capacity as the Secretary of the Treasury. Under Executive Order 13224, as amended by Executive Order 13886, which implements the International Emergency Economic Powers Act, 50 U.S.C. § 1701, *et seq.*, the

Secretary has the authority to prohibit transactions between U.S. persons and specially designated global terrorists.

4. Defendant Andrea Gacki is sued in her official capacity as the Director of the Office of Foreign Assets Control and is responsible for implementing and enforcing the GTSR.

## JURISDICTION AND VENUE

5. This Court has jurisdiction over the subject matter under 28 U.S.C. § 1331, 1337, and 1361.

6. Venue is proper under 5 U.S.C. § 703 and 28 U.S.C. § 1391(e) because at least one defendant resides in the District of Columbia and a substantial part of the events or omissions giving rise to the claims occurred in the District of Columbia.

## BACKGROUND

7. This case arises because in February 2016, OFAC instructed Deutsche Bank Trust Company Americas ("Deutsche Bank Americas") to refuse to refund Askan's $915,960.96 down payment to Askan after a deal for the sale of a commercial aircraft went sour. Askan has sought to retrieve its down payment from Froriep, a Swiss law firm acting as escrow agent, after the cancelled sale of an Airbus A320 airplane from JetPro International, LLC ("JetPro"), a company registered in the United States. Both Froriep and Askan have petitioned OFAC for a license to release the funds but OFAC denied both petitions. Both times, OFAC stated, without providing any facts supporting its conclusion, that a "specially designated global terrorist" ("SDGT") sanctioned under the GTSR was involved in the transaction.

8. On multiple occasions, Askan searched OFAC's Specially Designated Nationals and Blocked Persons List ("SDN List") but found nothing. Askan spent hundreds of thousands of dollars in expert research and attorneys' fees to determine the identity of the alleged SDGT but

still found nothing. Having found nothing supporting OFAC, Askan submitted another license application on October 9, 2019. OFAC has not responded to this request and has never identified the SDGT or disclosed any other facts in support of its conclusion. As a result of OFAC's delay, Askan has been forced to borrow to pay more than $200,000 in attorneys' fees and other costs. The interest on the loan and Askan's costs continue to mount as OFAC prolongs its decision.

**I.     Askan Seeks to Purchase an Airbus A320**

9. In order to operate a commercial airlines, TIA must maintain an Air Operator Certificate ("AOC"). TIA lost its AOC in August 2015 after it could not maintain the statutorily required number of commercial flights. TIA sought to purchase an Airbus A320 to enable it to regain its AOC.

10. In 2015, Askan contracted with Jazz Jet Aviation, a company organized under the laws of Turkey and owned and directed by Mr. Ufuk Sen, to find a suitable second-hand aircraft for TIA's operations.

11. Jazz Jet Aviation found a used Airbus A320 aircraft offered for sale by JetPro. The proposed price for the Airbus A320 was $9,200,000.

12. On or about December 23, 2015, Askan and JetPro entered into a Letter of Intent ("LOI") to purchase the Airbus A320 with its engines, engine components, and auxiliary power unit.

13. Jazz Jet Aviation contracted with Adaero Engine Management LLC ("Adaero"), a United States inspection company in Rockford, Illinois, to inspect and report on the aircraft. This inspection was conducted by Mr. Recep Ilgin, a Turkish national. On information and belief, Jazz Jet Aviation selected Mr. Ilgin based on his experience working with Turkish Airlines for more than twenty years. Askan was not a party to Jazz Jet's contract with Adaero.

14. After a successful inspection of the aircraft and in accordance with the LOI, Askan remitted $923,000 on January 4, 2016, toward the $9,200,000 purchase price. Askan deposited these funds with Froriep, a Swiss law firm based in Geneva which acted as escrow agent.

15. JetPro had sought to sell the aircraft under a "back-to-back" agreement, with one agreement between it and Askan, and another between JetPro and the aircraft's owner. However, JetPro was unsuccessful despite Askan having paid the deposit in a timely manner. Subsequently, Askan provided another extension to JetPro to finalize the transaction. JetPro again failed to complete the transaction as it evidently had difficulty with the aircraft's owner.

16. By this point, the company did not even reply to Askan's repeated emails or phone calls. It was only after Askan's then-counsel sent emails to JetPro and informed it that losses would be claimed against JetPro that JetPro then stated it would "most probably" have to apply to OFAC for a specific license. JetPro also claimed that the U.S. Department of Commerce's Office of Export Enforcement had advised JetPro to cancel the sale, which JetPro did. Askan believes this was a disingenuous move JetPro contrived to rid itself of the responsibilities arising from Askan's losses.

17. Kyle Wine, Vice President of Sales and Marketing of JetPro stated that he had cancelled the agreement due to Mr. Ilgin having formerly been named on the Entity List (or the Denied Persons List) maintained by the U.S. Department of Commerce's Bureau of Industry and Security. However, Mr. Ilgin was no longer on the Entity List and was not named on the SDN List maintained by OFAC. Askan was therefore unable to trace any such information. Furthermore, Mr. Ilgin was not even a shareholder or a party to either the buyer's or seller's sides.

18. After JetPro cancelled the transaction, Askan requested that Froriep return the $923,000 down payment, less an escrow fee. When Froriep attempted on February 3, 2016, to

transfer the funds from its bank, Credit Suisse AG, to Askan's bank, Akbank T.A.S., the transaction was blocked by Deutsche Bank Americas.

### III. OFAC's Blocking of the Return of Funds.

19. On information and belief, Deutsche Bank Americas blocked the funds at the direction of OFAC, which was purportedly acting under the authority of the GTSR.

20. Under 31 C.F.R. § 594.203(a), a regulation OFAC promulgated, Deutsche Bank Americas was required to place those funds in an account in the United States, where the funds were frozen. Under 31 C.F.R. § 594.202(c), which was also issued by OFAC, Deutsche Bank Americas was not permitted to transfer those funds to anyone without a license from OFAC.

21. Since February 3, 2016, Deutsche Bank Americas has held Askan's down payment, which is now $915,960.96, in a frozen bank account in the United States which Askan cannot access.

22. Froriep petitioned OFAC to unfreeze the money on February 22, 2016. OFAC denied the request (case number SDGT-2016-327008-1) on May 2, 2017, and asserted that an entity designated under the GTSR, which OFAC refused to name, had an interest in the transaction.

23. Askan submitted another petition to OFAC (case number SDGT-2016-329910-1) on May 18, 2016, to release the funds. This petition was also denied on the same day and on the same basis as the petition filed by Froriep.

24. Given the lack of information from OFAC, Askan had to independently investigate the facts and parties to determine the basis on which the agency had cited the GTSR. Askan conducted searches on the parties using OFAC's own SDN List search tool online and using Lexis-Nexis screening software. None of these multiple searches generated any positive or relevant results. Askan found no relevant matches for any party having an interest in the transaction.

25. Askan then hired an independent, third-party due diligence firm in the United States with extensive contacts in Turkey and Europe. That firm found no nexus between the parties at issue with any entities that may be subject to the GTSR.

26. Accordingly, Askan concluded that OFAC's action blocking release of the funds was mistaken, perhaps due to mistaken identity or incomplete facts.

27. On October 9, 2019, Askan filed another license application (OFAC License No. SDGT-2019-363638-1) requesting OFAC order Deutsche Bank Americas to release the funds. A copy of this license application is attached as Exhibit A. To this date, OFAC has yet to respond.

28. As a result of OFAC's delay, Askan has been forced to borrow to pay more than $200,000 in attorneys' fees and other costs. The interest on the loan and Askan' costs continue to mount as OFAC prolongs its decision.

## COUNT ONE
## ARBITRARY AND CAPRICIOUS DENIAL OF LICENSE APPLICATION IN VIOLATION OF 5. U.S.C. § 706(2)

29. Askan repeats and realleges the allegations in the Paragraphs 1-28 above.

30. On information and belief, OFAC directed Deutsche Bank Americas to block return of the down payment to Askan based on erroneous information that OFAC can and should have corrected at the time of its directive to Deutsche Bank Americas and at all times since that directive.

31. Agency decisions may not be arbitrary and capricious or violate constitutional rights and must be based on facts available at the time of the decision. The Administrative Procedure Act authorizes courts to vacate a judgment if the agency decision is arbitrary and capricious, unsupported by substantial evidence, and unwarranted by the facts. 5 U.S.C. § 706(2).

32. OFAC's blocking of funds against Askan, and refusal to grant Askan a license to allow Askan's down payment to be refunded to it, is an unlawful arbitrary and capricious action unwarranted by the facts of the case, in violation of § 706(2).

## COUNT TWO
## UNREASONABLE DELAY IN VIOLATION OF 5 U.S.C. § 706(1)

33. Askan repeats and realleges the allegations in Paragraphs 1-32 above.

34. By failing to act on Askan's application for a license (OFAC License No. SDGT-2019-363638-1), OFAC has undermined Askan's ability to protect its legitimate business and property interests, to be able to recognize when OFAC's regulations prohibit a particular transaction or dealing with a particular party, and to be able to arrange its affairs accordingly. OFAC has also undermined Askan's ability to vigorously advocate on behalf of its own interests and to correct any errors in OFAC's determinations.

35. Under the Administrative Procedures Act, a "person suffering legal wrong because of agency action…is entitled to judicial review thereof." 5 U.S.C. § 702.

36. "Agency action" includes "failure to act." 5 U.S.C. § 551(13).

37. A court reviewing an agency action "shall…compel agency action unlawfully withheld or unreasonably delayed…." 5 U.S.C. 706(1).

38. The Administrative Procedure Act further requires that prompt notice be given of the denial of a written application, petition, or other request made by an interested person in an agency proceeding. 5 U.S.C. § 555(e).

39. More than seven months after Askan filed the October 9, 2019, license application, OFAC still has not acted on the application.

40. Askan has effectively lost access to $915,960.96 of its own money, has been prevented from assisting TIA in recovering its AOC or to operate airline services as planned, and has unnecessarily incurred extensive attorney and expert fees to resolve this matter.

41. Askan has been irreparably harmed, has no adequate remedy at law, and the equities of this case favor Askan.

42. Askan is entitled to injunctive relief ordering OFAC to stop blocking return of Askan's down payment to it, or in the alternative, to provide information to Askan explaining the factual basis supporting OFAC's action.

## COUNT THREE
## VIOLATION OF THE FIFTH AMENDMENT DUE PROCESS CLAUSE

43. Askan repeats and realleges the allegations contained in Paragraphs 1-42 above.

44. The government violates the Fifth Amendment Due Process Clause when it fails to properly balance (1) the private interest affected by the action; (2) the risk of erroneous deprivation of such interest; and (3) the government interest in the action. *See Matthews v. Eldridge*, 424 U.S. 319, 335 (1976).

45. OFAC violated Askan's Fifth Amendment Due Process rights under the United States Constitution by failing to identify the party that gave OFAC the authority under 31 C.F.R. § 594.201 to block Askan's property in the United States.

46. OFAC further violated Askan's Fifth Amendment Due Process rights by failing to provide Askan with (1) the unclassified information supporting OFAC's determination and (2) unclassified summaries of the classified information supporting that determination.

47. OFAC's conduct, in violation of Askan's Due Process rights, prevented Askan from being able to offer a meaningful, specific, and substantial response to OFAC's blocking of funds, and deprived Askan of both notice and an opportunity to be heard.

## PRAYER FOR RELIEF

WHEREFORE Plaintiff Askan Holdings, Ltd. requests the following relief:

i) A declaration, pursuant to the Court's authority under 28 U.S.C. §§ 2201(a) and 2202, that OFAC's blocking the return of funds to Askan is unlawful and in violation of the Administrative Procedure Act and the Fifth Amendment to the United States Constitution;

ii) An injunction ordering OFAC

    a. To issue a decision on Askan's application for a license (OFAC License No. SDGT-2019-363638-1); or, in the alternative,

    b. To stop blocking the return of funds to Askan;

iii) Relief in the nature of mandamus ordering OFAC

    a. To issue a decision on Askan's application for a license (OFAC License No. SDGT-2019-363638-1); or, in the alternative,

    b. To stop blocking the return of funds to Askan;

iv) An injunction ordering OFAC to issue the license to Askan requested in OFAC License No. SDGT-2019-363638-1;

v) Award Askan attorneys' fees and costs incurred in this action; and

vi) Such other and further relief as this Court deems just and proper.

Dated: June 2, 2020                  Respectfully submitted,

                                          /s/ Teresa Taylor
Teresa Taylor (DC Bar No. 484655)
Joseph G. Cosby (DC Bar No. 29677)
Butzel Long, P.C.
1909 K Street, N.W., Suite 500
Washington, DC 20006
Tel: (202) 454-2800
Fax: (202) 454-2805
taylortn@butzel.com
cosby@butzel.com

*Counsel to Plaintiff Askan Holdings, Ltd.*