## IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| ASKAN HOLDINGS, | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | Case No.:  1:20-cv-01458- RJL |
| U.S. DEPARTMENT OF THE | ) | |
| TREASURY, | ) | |
| *et al.*, Defendants. | ) | |
| | ) | |

## JOINT STATUS REPORT

On August 14, 2020, Defendants filed a motion requesting that the hearing set for August 18, 2020, be continued in light of Defendants' intention to grant the license that was the subject of Plaintiff's motion, and proposing to file an updated status report today, September 1, 2020. *See* ECF No. 19.  Plaintiff consented in part, and requested that the Court set a later date for the hearing.  *See* ECF No. 20.  By Minute Order dated August 16, 2020, the Court granted the motion, vacated the hearing date, and directed the parties to file a status report on or before September 1, 2020, proposing next steps.  In an unanticipated turn of events, the funds have not yet transferred to Plaintiff, and the parties have different views about appropriate next steps. Counsel for the parties have conferred and report as follows:

On August 17, 2020, Defendant Office of Foreign Assets Control (OFAC) issued a license to Deutsche Bank Trust Company Americas ("Deutsche Bank") authorizing Deutsche Bank to process the return to Plaintiff Askan Holdings, Ltd. ("Askan") of funds previously blocked by OFAC, in accordance with the original wire payment instructions.  On the same day, the government informed Askan (through counsel) that the license had been issued.  It turned out, however, that Deutsche Bank no longer had custody of the funds.

**DEFENDANTS' POSITION**

1.       Defendants report that on Thursday, August 27, 2020, the financial institution informed OFAC that it no longer has custody of the blocked funds; rather, in November 2019, pursuant to New York law, the blocked funds were escheated to the State of New York.  On August 27, 2020, OFAC promptly contacted the State of New York to confirm that it still held the funds, and to facilitate the release of the funds to Plaintiff.  On Friday, August 28, 2020, the State confirmed that it holds the funds, and OFAC informed Plaintiff (through counsel) of that fact on that same day.   OFAC is awaiting word from the State of New York on whether it can transfer the funds by wire transfer (rather than their standard process of issuing a check) and is in the process of determining what additional information or action is needed.

2.       Defendants understand this development surprised Plaintiff, and Defendants have been attempting to answer many of Plaintiff's questions since learning of the escheatment late last week.  For example, Defendants have informed Plaintiff that at the time of the escheatment, the State of New York ("NYS") was authorized pursuant to a broad license issued by OFAC to escheat funds blocked pursuant to one or more sanctions programs where escheatment was required by NYS law, so long as such funds continue to be treated as blocked funds in compliance with OFAC regulations.  In short, the custody of the funds transferred to NYS, but they remained blocked pursuant to OFAC regulations.  The license, which expired in January 2020, would have sufficed for NYS to complete the escheatment such that no additional license from OFAC (to either Deutsche Bank or NYS) would have been required.  Defendants' counsel also confirmed that the 2002 FAQ available on the agency's website (and referenced in Plaintiff's Position, below) is somewhat out-of-date on this issue.

3.      At this time, OFAC staff are working diligently to provide Plaintiff with additional information about what steps may be necessary for Plaintiff to seek the return of the funds from NYS.  The agency anticipates issuing a new license to NYS with respect to these funds as soon as the payment mechanism has been identified by NYS and the details of the funds transfer have been confirmed.  Once OFAC licenses the transfer by NYS, OFAC will have no further control over the disposition of funds.  At this time, Defendants expect to be able to provide additional information to Plaintiff in the next few days.

4.      Defendants continue to believe this action will be mooted by the unblocking of the funds, as set forth in the Motion to Continue.  *See* ECF No. 19.   If no other resolution is reached, Defendants anticipate filing a motion to dismiss on mootness grounds.

5.      Defendants propose filing another status report in two weeks, on September 15, 2020, updating the Court as to the status of this matter and proposing next steps.

6.      Plaintiff's proposal makes two sets of demands.  First, Plaintiff demands publicly-filed answers to questions about the escheatment to NYS.  While Defendants have been working to answer Plaintiff's questions about the escheatment, and will continue to do so, none of the questions posed below are relevant to issues before the Court and are premature given the status of the case and the ongoing efforts by Defendants.  Second, Plaintiff demands answers to questions about the redaction of the record for the license denial.  The record previously provided is not for the escheatment and does not reflect information about the escheatment.  Indeed, the record for the blocking/license denial is for an agency action that is in the process of being completely reversed and is not relevant to any question that Defendants will put before the Court going forward.  All of Plaintiff's demanded information about the circumstances of the escheatment is irrelevant to the claims before the Court.

**PLAINTIFF'S POSITION**

7.     Askan is deeply concerned that this surprising turn of events undermines the government's credibility in dealing not only with Askan but also with the public in general. Askan takes particular note of FAQ 39, which OFAC posted on its website on September 10, 2002, which remains on its site today:

> **39. What do I do if I have a blocked account that needs to be escheated to the state?**
>
> Answer
>
> You need to discuss this with your state authorities and with OFAC. For instance, the state of New York has a license to escheat blocked funds, pending OFAC approval of each transfer. Banks in New York should contact the State Banking Department for instructions on how to proceed. Banks in other states should contact OFAC directly for instructions on how to proceed.

8.     Furthermore, under 31 C.F.R. §§ 594.301 and 594.504, OFAC's own regulations explicitly state that a bank that holds blocked funds must obtain a license before it transfers those funds to anyone outside of the bank.  Under those regulations and the public guidance that OFAC has given in FAQ 39 on its website, it would be illegal for Deutsche Bank to transfer funds to the State of New York even if state law would otherwise require the bank to escheat the funds.

9.     Only this late this afternoon, OFAC represented to Askan that the license to New York described in FAQ 39, which OFAC is still publicizing to the world as its guidance on this matter, no longer exists.  OFAC now asserts that it had issued a broad license to New York that did not require OFAC's knowledge or consent before New York banks turned blocked funds, which belong to the owners of those accounts, over to New York State as abandoned property. But to the best of Askan's knowledge, OFAC has not yet produced this license to Askan or published an FAQ or any other guidance on its website to alert the public of the existence of this license or the nature of its terms.

10.     The government states that the broad license it had issued authorized New York "to escheat funds blocked pursuant to one or more sanctions programs where escheatment was required by NYS law."  But New York escheatment law applies to a bank account only when the funds in that account "have remained unclaimed for three years by the person or persons appearing to be entitled thereto…."  NY Aband Prop L §300(1)(a).  Askan claimed the funds in that account when it filed a license application in 2016 shortly after the account was blocked and even filed a another application in October 2019.  Ironically, Askan filed the second of these applications less than a month before the date OFAC now asserts that Deutsche Bank turned the funds over to the State of New York.  New York law, therefore, did *not* require escheatment and it remains unclear as to why this process was allowed to take place.

11.     These unsettling events raise significant questions that require answers, including, among others:

        a.      Did OFAC approve escheating the funds in the account to the state of New York, or had it approved a broad authorization enabling funds such as those in question to be escheated to the state of New York?

        b.      Did either Deutsche Bank or the state of New York contact OFAC about this matter, as this FAQ says is required by the OFAC license to the state of New York?

        c.      What were the terms of the license to New York that OFAC disclosed only this afternoon that allowed the Deutsche Bank account to escheat to New York?  How did OFAC and New York State address the legitimate property rights of individuals and entities whose property had been blocked in New York banks as a result of OFAC regulations and other acts?

d.      Did OFAC notify Deutsche Bank when the license applications were filed so that the bank would know that the account had not been abandoned?

12.     These new developments also raise important questions about unclassified communications between OFAC and Deutsche Bank and why those communications were not disclosed as part of the administrative record excerpts that OFAC provided to Askan on July 31, 2020.  These questions are particularly important with respect to providing Askan with relevant information concerning the status of its funds, whose disposition is the subject of this lawsuit. Those questions include, among others:

a.      Why were all of the communications between OFAC and Deutsche Bank redacted from the administrative record excerpts that were provided to Askan on July 31, 2020?

b.      Did anything in those communications discuss escheating funds to New York, whether as something that might occur or as something that had already happened?

c.      Did Deutsche Bank make annual reports to OFAC about the status of the account, as required by 31 CFR 501.603(b)(2)?

d.      What did those reports say about the status of the account at Deutsche Bank or the possibility that the funds might be escheated to state authorities?

13.     Each of these questions raise serious questions that have changed the nature of this case and may compel Askan to amend its complaint in order to take proper account of the information that the answers to these questions reveals.

14.     Askan proposes that this Court order the defendants to file a statement within ten days (by September 11, 2020) answering each of the questions listed above and providing Askan with a copy of the license to New York that OFAC disclosed today and other indisputably relevant documents.  Askan further proposes that the Court direct the parties to file a status

report within ten days thereafter (by September 21, 2020) concerning further steps to be taken in this case.

Dated:  September 1, 2020

Respectfully submitted,

      */s/* Teresa Taylor
Teresa Taylor (DC Bar No. 484655)
Joseph G. Cosby (DC Bar No. 29677)
Ira E. Hoffman (DC Bar No. 389132)
BUTZEL LONG, P.C.
1909 K Street, N.W., Suite 500
Washington, DC  20006
Tel:  (202) 454-2800
Fax: (202) 454-2805
taylortn@butzel.com
cosby@butzel.com


*Counsel to Askan Holdings, Ltd.*

ETHAN P. DAVIS
Acting Assistant Attorney General
DIANE KELLEHER
Assistant Director, Federal Programs Branch

      /s/Amy E. Powell
Amy E. Powell
Civil Division, Department of Justice
c/o U.S. Attorney's Office
150 Fayetteville St., Suite 2100
Raleigh, NC 2760
Phone: 919-856-4013
Email: amy.powell@usdoj.gov

*Counsel to Defendants*

8